Richard S. Heller, J.
This is a claim for an alleged appropriation of land in connection with a grade crossing elimination and for consequential damages allegedly resulting from the grade crossing elimination. The case was previously tried in this court and claimant was awarded the sum of $14,000 (8 Misc 2d 286). On appeal to the Appellate Division of the Supreme Court, Fourth Department, the judgment of the Court of Claims was reversed on the law and facts and a new trial granted. (6 A D 2d 993.) On this trial, pursuant to the judgment of the Appellate Division, the parties stipulated that the record of the first trial he made a part of the record of this trial.
Claimant was and still is the owner of the premises described in the claim and reference is made thereto for a detailed description. Prior to the improvement the claimant occupied the premises for foundry purposes with the southeasterly corner of the main foundry building located approximately 33 feet west of the westerly edge of the pavement of Lemoyne Avenue and the northeast corner of the main building located *405 approximately 55 feet west of the westerly edge of the pavement of Lemoyne Avenue.
The area between the pavement of Lemoyne Avenue and the foundry building was substantially at grade with the pavement and was open and unpaved.
About the middle of the easterly wall of the main foundry building was a loading dock the floor of which was above grade so that trucks and tractor-trailers could back against the dock and material could be unloaded and loaded from the foundry from within the building. There was sufficient room from this loading access of the foundry so that tractor-trailers with a trailer from 30 to 33 feet in length could back up to the building and park for loading and unloading purposes without interfering with traffic on Lemoyne Avenue.
The Lemoyne Avenue pavement was slightly upgrade to the south of the foundry and downgrade to the north. In the wintertime when the pavement was slippery, empty tractor-trailers customarily left the foundry by turning north on Lemoyne Avenue so as to avoid any problem involved in the slippery pavement and the upgrade to the south. All materials received by the foundry and shipped by the foundry were handled by truck and tractor-trailer and the usual volume of materials received was approximately 100,000 pounds per month and the usual volume of materials shipped was also about 100,000 pounds per month.
The grade crossing elimination was accomplished by depressing Lemoyne Avenue under the tracks of the New York Central Eailroad Company which constituted the northerly boundary of claimant’s plot.
At the time of this trial, immediately east of the southeast corner of the foundry building, there was a walk or retaining wall erected by the claimant approximately 2% feet in width, extending northerly along the east wall of the building for approximately 20 feet where the walk joined a loading dock constructed by the claimant which extended approximately 23 feet northeasterly perpendicular to the east wall of the foundry building. The dock was about 5 feet wide for its 23-foot length and then reduced to about an 18-foot width along the northerly 20 feet of the east wall of the foundry building. To the east of the walk at the southeast corner of the building was an open area of unpaved ground about 3% feet in width. Along the southerly face of the loading dock there was an open, unpaved area from the sidewalk of about 10 feet. East of this open area was blacktop pavement installed by the State about 20 feet in *406 width, and extending about 10 feet north of the south face of the loading dock and east thereof to a concrete gutter which ran northerly to the railroad right of way and a barricade south of the railroad tracks. On the east edge of the pavement there was a curb and east of the curb was a three-strand steel cable fence. From this fence there was a slope downward to a depth of 22 or 24 feet and at the base of this slope lies the newly constructed Lemoyne Avenue.
The pavement lying east of the foundry is the northerly end of a 20-foot wide street built by the State and described as the West Frontage Road. The new pavement constructed extended about 220 feet south of the railroad at which point the old pavement of Lemoyne Avenue, which was approximately 20 feet wide, was utilized as a part of the West Frontage Road. Some 1,200 feet south of claimant’s property, access was provided from the old Lemoyne Avenue pavement now known as the West Frontage Road to the new Lemoyne Avenue.
The claimant contends that a part of this new pavement was constructed on his land.
The first problem on this trial, as on the former trial, is to determine the width of the State’s right of way. The court finds that the State had a 66-foot right of way. No additional evidence was adduced on the retrial to affect the conclusion reached by the court on the first trial of this action that the State had a 66-foot right of way and the evidence and pertinent law is well set forth in the opinion following the first trial. (Meloon Bronze Foundry v. State of New York, 8 Misc 2d 286, supra.)
On the retrial, unlike the first trial, both parties presented engineers who had surveyed and located the center line of the 66-foot right of way as established by the certificate of the highway commissioners for Districts No. 2 and No. 3 of the Town of Salina on May 24, 1842 and in evidence as Exhibit "A”. The claimant’s witness who surveyed and located this center line concluded that a small triangle of pavement containing approximately 84 square feet was located on claimant’s land. This witness showed this triangle on Exhibit 38 with its base 3 t'o 3% feet in length along the southerly edge of the loading dock and with an easterly leg about 40 feet in length and a westerly leg about 38 feet in length.
The State also presented a survey locating the center line of the right of way and the right of way boundaries made by one of its employees. This survey tied in with the contract base line and the center line of Lemoyne Avenue pave *407 naent and with measurements made from claimant’s buildings during the trial. This survey shows no encroachments on claimant’s land.
The only substantial difference between the two surveys appears to be in the starting point. Both surveyors located a point described on the certificate of the highway commissioner dated May 24, 1842 as a point ‘ ‘ beginning on the southerly line of lot 27 of the original township of Manlius, now Salina, at a point north forty-two degrees west, fifty-two and one-half links from the northwesterly corner of Block #136 of the Village of Salina.” Claimant’s witness shows this measurement of 52% links as 31.5 feet, whereas, the State surveyor correctly shows this measurement 52% links as 34.65 feet. The court can only conclude that the starting point of claimant’s survey is about 3.15 feet east of the correct and actual starting point of the center line of the highway. It follows that this error must reflect in all courses run thereafter from the incorrect starting point.
The court finds that the claimant has failed to establish that there has been any appropriation of its property. The claimant is not entitled to any award for appropriation of its property and this leaves for determination the claim for compensation by reason of an alleged failure of the State to provide a suitable means of access to this abutting owner. The applicable principles for determination of a right to compensation for deprivation of any suitable means of access have been set forth in the memorandum of the Appellate Division. (Meloon Bronze Foundry v. State of New York, 6 A D 2d 993, supra.)
Prior to the improvement the claimant had direct access to a 66-foot right of way, only 20 feet of which was paved and used by the State for a flow of heavy traffic. The claimant thus had available approximately 22 feet of the right of way lying west of the westerly edge of the pavement which it utilized in conjunction with some of its own unoccupied land to back trailers to its building and park them extending at right angles to its building for more than 33 feet easterly from the east wall of the building. With the State’s utilization of the full width of its right of way with the westerly 20 feet thereof being devoted to the West Frontage Road with a fence and steep slope lying east of that road, claimant no longer has sufficient room to permit the backing up of tractor-trailers to its own access doors. Furthermore for a distance of 1,200 feet south from claimant’s property there is no place that the usable State right of way is sufficient to permit the turning of tractor-trailers and trucks.
*408 As a result the claimant has built the loading dock extending eastward from the east wall of Its building and is now utilizing adjoining property, which it rents but has been unable to purchase, for the purpose of turning tractor-trailers so that materials may be loaded and unloaded from the loading dock without the tractor-trailer having to back up either coming to claimant’s property or going from claimant’s property for a distance of some 1,200 feet. Claimant’s problems have been further complicated by the fact that the West Frontage Road has a slightly steeper upgrade to the south than was true of the old Lemoyne Avenue and as a result unloaded tractor-trailers experience difficulty when the pavement is slippery in leaving claimant’s premises. It is, of course, no longer possible for traffic to leave claimant’s premises by turning to the north.
The uncontradicted evidence in the record establishes that the highest and best use of these premises prior to the improvement was for ■ industrial purposes such as the foundry now located thereon. It therefore follows that the State was chargeable with the knowledge that reasonable access to these premises must include suitable facilities for the type of vehicle known to be used in conjunction with such a use of the premises. The court finds as a matter of fact that the creation of a culde-sac to be used by vehicles having a total length of some 40 feet without providing some reasonable method whereby such vehicles can leave the cul-de-sac, deprived this claimant of any reasonable ingress and egress suitable to the highest and best use of the property.
This does not mean that the State in any way is required to provide a place where such vehicles can be parked and loaded and unloaded. It simply means that the State must provide reasonably for both ingress and egress. The State’s failure to so provide has left this claimant with no suitable means of access to his premises. The existing right of way is simply too narrow to permit the proper handling of the vehicles necessary for the highest and best use of claimant’s premises. No willing purchaser would now consider claimant’s land as having any substantial value for any enterprise dependent upon large truck and tractor-trailer transportation.
This deprivation by the State cannot be avoided by the fact that thus far the claimant has been able to circumvent the conditions created by the State by the expenditure of a small sum of money to rent an adjoining lot.
The court finds that the increase in the slope of the West Frontage Road compared with the former Lemoyne Avenue pavement does not make the means of access unsuitable.
*409 Determination of the amount of damage presents a considerable problem on the evidence in this case, since only the claimant presented any evidence as to the value prior to the elimination of suitable access and the value after the elimination of suitable access. The State did not even cross-examine claimant’s witness. The use by the claimant of an adjoining lot rented on a month to month basis at a cost of $60 per month has permitted the continued use of the property for heavy industrial purposes. Loss of the use of that lot would either eliminate the present use of the property and all other uses dependent upon truck and tractor-trailer transportation or require a very extensive revamping of the present structural layout on claimant’s premises in order to utilize a part of its land for the suitable ingress and egress to which the claimant has a right over a public right of way.
Under these circumstances the court finds that the claimant’s premises had a fair market value immediately before the deprivation of suitable means of ingress and egress of $80,190 and that the fair market value of the claimant’s premises after it was deprived of a suitable means of ingress and egress was $63,190.
Claimant is awarded the sum of $17,000 with interest thereon from October 8, 1953 to date of entry of judgment.
The court has viewed the premises.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered (Civ. Prac. Act, § 440).
Let judgment be entered accordingly.